SARAH C. WEST, RESPONDENT, v. LILLIAN M. PREST, ADMINISTRATRIX, ETC., OF WALTER L. REEVE, DECEASED, APPELLANT.

Argued June 29, 1922—Decided November 20, 1922.

1. Ordinarily, where services are rendered and voluntarily accepted, the law will imply a promise upon the part of the recipient to pay for them; but where services are rendered by members of a family living as one household, to each other, there will be no such implication from the mere rendition and acceptance of the services. In order to recover for the services, the plaintiff must affirmatively show either an express contract for the services or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation.

2. In a suit to recover for support, maintenance and education furnished an infant, section 7 of the statute of frauds (*Comp. Stat., p.* 2616), which provides ratification in writing of a promise to pay after full age, of a debt contracted during infancy is not a defense, as the basis for the action is for necessaries which an infant could personally obligate himself to pay.

On appeal from the Supreme Court.

For the appellant, *Charles L. Morgan* and *Jeremiah A. Kiernan.*

For the respondent, *Lum, Tamblyn & Colyer* (*Ralph E. Lum,* of counsel).

The opinion of the court was delivered by

KALISCH, J. From a judgment entered in the Supreme Court upon a verdict rendered therein for the respondent, plaintiff below, and against the appellant, defendant below, the latter appeals. The appeal is based solely upon alleged trial errors. This makes it necessary to summarize such facts as give rise to the complaint of trial errors.

Walter L. Reeve, deceased, who was the son of the appellant, administratrix of his estate, was born in 1898 and died

in 1921. When he was three years of age his parents separated. The mother did not take the child into her custody, but left it with its father, who, being unable to properly care for it, placed it in the household of the child's aunt, the respondent, who, according to the testimony provided for its support, maintenance and education, with the exception of clothing, which was provided by his father up to two years prior to his son's death. The child's mother never contributed anything toward its support, and the only fair inference to be drawn from the testimony in the cause is that she abandoned it to its fate and was not further concerned with anything relating to her son, until after his death, when, as mother, she applied for letters of administration upon her son's estate, he having inherited, in 1920, from his grandfather's estate, about forty-five hundred dollars.

The decedent had lived in the household of his aunt continuously from his early childhood, with the exception of the time he served in the United States army, overseas, from 1917 to 1919. He was honorably discharged from further service and returned to the home of his aunt, in broken health, and where she and her daughter nursed him during a severe and protracted illness. It further appeared that in August, 1917, he had written a letter to his aunt, in which, among other things, he wrote: "In regard to any of my grandfather's estate which may have been inherited by myself, I would like to ask you to take that estate for your own. I will try to make a temporary statement to this same effect. If I could get home some way I am sure that we could fix it so that no one could touch it except yourself." Helen B. West, a daughter of the respondent, testified that in December, 1920, the decedent being then above twenty-one years of age, said to her: "If anything should have happened to me Aunt Carrie is the one that would get everything I had; she is the one that has been a mother to me, has done everything for me, and my home has been here. I never can repay her." Mrs. Dodson, another witness, testified that the deceased told her that his Aunt Carrie "should be well paid for anything she ever did for him, and he never could pay her, he said, for

what she done; she was awfully good to him." The witness, Carpenter, testified that in a conversation with the decedent the latter said: "He would see that his aunt was well repaid for everything she did for him," and that he heard him say that "he owed her for everything in this world." There was also testimony to the effect that the decedent made the remark that the sooner he died the more his Aunt Carrie would have and the sooner she would get it.

The above summary represents substantially the state of the case when the plaintiff below rested and upon which was founded her action to recover compensation from the estate of defendant's son, on a *quantum meruit* for board, lodging, maintenance, nursing, &c., furnished him from May 1, 1915, to May 1, 1921.

Counsel of appellant moved for a nonsuit upon the ground that there was no proof that the decedent owed the plaintiff anything for board, which motion was refused.

It is contended that this action of the trial judge was erroneous. In support of this contention it is argued that there was no testimony tending to establish an express understanding between the decedent and the plaintiff that the latter was to receive compensation from the former for board and lodging furnished and services rendered; that there was no proof that the decedent had not paid the plaintiff for the same; that as the deceased did not become of age until December 20th, 1919, therefore "any admissions made by him before that time were not binding upon him and would not be binding unless they were expressly ratified by him after he became of age."

Now, as to the first contention, the legal rule governing the subject as settled by a decision of this court, in *Disbrow* v. *Durand*, 54 *N. J. L.* 343, is stated, on page 345, to be as follows: "Ordinarily, where services are rendered and voluntarily accepted the law will imply a promise upon the part of the recipient to pay for them; but where services are rendered by members of a family, living as one household, to each other, there will be no such implication from the mere rendition and acceptance of the services. In order to recover

for the services the plaintiff must affirmatively show either an express contract for remuneration existed or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation." See also *Heinz* v. *Jacobi,* 76 *Id.* 189.

Since there was testimony in the present case, both oral and written, which tended to show that there was a mutual expectation that the plaintiff was to be compensated, it became a jury question whether or not such mutual understanding existed between the parties. The second contention, that there was no proof that the decedent had not paid the plaintiff during his lifetime for what he received from the plaintiff, is without support.

It is true that there was no positive testimony coming from the plaintiff to that end, because, under the law, in a case of this nature, she could not be a witness in her own behalf unless the defendant waived the disability, and this was not done. But there was testimony coming from other witnesses to whom the decedent had made statements from which a jury was warranted in finding that the decedent had not paid the plaintiff anything in discharge of his indebtedness to her, but that he expected to do so by giving her all of his estate inherited by him from his grandfather.

There is no substance in the third contention, made in support of the motion for a nonsuit, in that the decedent was an infant and, therefore, could not legally bind himself to pay, and that the contract could not be enforced, unless after he became of age he ratified the same in writing, and this he did not do. It is clear from the evidence in the cause that the defendant was not entitled to succeed on the motion for nonsuit on that ground.

The seventh section of "An act for the prevention of frauds and perjuries" (2 *Comp. Stat., p.* 2616), upon which counsel of appellant relies, is manifestly not applicable here, because the section invoked clearly refers to a situation where infancy could have been successfully pleaded as a defense; but as the plaintiff's claim was for necessaries furnished to the infant

for which he could personally obligate himself to pay, it follows as a logical sequence that ratification was unnecessary when he became of age. For the reasons given the motion for a nonsuit was properly refused.

It is further urged that the court erred in receiving in evidence two letters written by the decedent and addressed to the plaintiff and received by her.

The letters were pertinent to the matter in issue, in that they tended to show the relation existing between the decedent and the plaintiff, and that the former expected to compensate the plaintiff for all that he had received from her.

There is no merit in the objection to the admission of the testimony of Helen West and Thomas Carpenter as to conversations had with the decedent in his lifetime. The conversations had a bearing on the question as to the expectation of the decedent to remunerate the plaintiff for furnishing him with board and lodging and nursing him during his illness.

The parts of the court's charge excepted to, as being erroneous in law and which are made the basis of the grounds of appeal, substantially involve the same legal questions previously discussed, as to the legal propriety of the trial judge to refuse to grant a nonsuit, which questions we have determined adversely to appellant's counsel's contention, and, therefore, further comment would answer no useful purpose.

Judgment is affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, WHITE, ACKERSON, VAN BUSKIRK, JJ. 11.

*For reversal*—KATZENBACH, WILLIAMS, JJ. 2.